Opinion
 

 CALLAHAN, J.
 

 In August 1994, plaintiff Jayne Williams was discharged as president and chief executive officer of HBS Technical Services, Inc.
 
 *1160
 
 (HBS). She sued HBS, Luis E. Lomeli, William Depew, Elmo Saunders, and Misae Saunders for breach of employment contract and related claims. HBS cross-complained against Williams and California State Integrators, Inc. (CSI), a company in which Williams served as an officer, director, and majority shareholder, for breach of fiduciary duty and related claims.
 

 Misae Saunders appeals from the judgment enforcing settlement of the employment dispute.
 
 [1]
 
 Citing
 
 Levy
 
 v.
 
 Superior Court
 
 (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171], she argues judgment should be reversed because she was not present at the settlement negotiations, did not personally sign the terms of settlement on November 17, 1995, and did not authorize anyone to act on her behalf. Misae Saunders also asserts the November 17, 1995, writing did not represent the final agreement between the parties because it contemplated execution of another document. We reverse the judgment.
 

 Factual and Procedural Background
 

 The parties agreed to mediate their dispute on November 17, 1995, and selected Lloyd Phillips, Jr., a retired superior court judge, as mediator. All parties to the lawsuit attended the mediation except Misae Saunders, who was out of the country. Each party was represented by counsel, including Melinda Guzman Moore for Williams in her capacity as cross-defendant and Randolph Cooke for the individual defendants, including Elmo and Misae Saunders.
 

 The parties settled the case and Moore made handwritten notes of the settlement terms, including the agreement to provide “Full and Final Mutual Releases signed by parties of all claims directly and indirectly related.”
 
 [2]
 
 The handwritten document was signed by those present, including Cooke and
 
 *1161
 
 Elmo Saunders. There is conflicting evidence whether anyone was authorized to act on Misae Saunders’s behalf.
 

 On November 21, 1995, Moore drafted and circulated for signature a “Mutual Full and Final Release of All Claims.” The document provided for release of all claims, known and unknown, and included an express waiver of Civil Code section
 
 [3]
 
 There is conflicting evidence whether the parties agreed to waive that statute during the November 17, 1995, mediation.
 

 Williams fulfilled her settlement obligations by signing the release on November 29, 1995, and dismissing her complaint with prejudice. Williams also returned the HBS stock to the corporation.
 

 HBS dismissed its cross-complaint with prejudice, but HBS and the individual defendants refused to sign the formal release prepared by Moore. Meanwhile, HBS president Lomeli informed shareholders at the February 8, 1996, shareholders’ meeting that the corporation had performed its side of the settlement agreement and the case with Williams was over. At the same meeting, HBS assigned all its “known and unknown” rights, except for specified accounts receivable, to Misae Saunders “for her personal usage.” Shareholders then dissolved the corporation.
 

 Neither HBS nor the individual defendants had signed the formal release when Williams successfully moved for entry of judgment pursuant to Code of Civil Procedure section 664.6 in May 1996.
 
 [4]
 
 The trial court did not specifically address the legal effect of Misae Saunders’s failure to personally sign the handwritten settlement agreement, although Elmo Saunders, Depew,
 
 *1162
 
 and Lomeli raised the issue in response to Williams’s motion.
 
 Levy
 
 v.
 
 Superior Court, supra,
 
 10 Cal.4th 578, was decided almost a year before the hearing.
 

 Elmo Saunders filed a notice of appeal on behalf of Misae Saunders and signed it as “Elmo Saunders, Counsel for Defendant and Appellant.” He filed an amended notice of appeal the same day, signing it as “Counsel in Pro Per for Defendant.” This court denied Williams’s motion to dismiss the appeal for lack of jurisdiction under California Rules of Court, rule 1(a).
 
 [5]
 

 Discussion
 

 I
 

 Standard of Review
 

 The trial court’s factual findings on a motion to enforce settlement pursuant to section 664.6 are subject to limited appellate review and will not be disturbed if supported by substantial evidence.
 
 (Kohn
 
 v.
 
 Jaymar-Ruby, Inc.
 
 (1994) 23 Cal.App.4th 1530, 1533 [28 Cal.Rptr.2d 780].) Where, as here, the central issue on appeal involves the construction and application of a statute, the court conducts an independent review of the trial court’s ruling.
 
 (Burckhard
 
 v.
 
 Del Monte Corp.
 
 (1996) 48 Cal.App.4th 1912, 1916 [56 Cal.Rptr.2d 569].)
 

 II
 

 Authority to Settle
 

 Misae Saunders argues the judgment should be reversed because she did not participate in mediation or personally sign the November 17, 1995, handwritten settlement agreement. We agree she is not bound by the settlement.
 

 In
 
 Levy
 
 v.
 
 Superior Court, supra,
 
 10 Cal.4th 578, the parties’ attorneys negotiated settlement of an action to collect attorney fees; the litigants were not involved in the settlement discussions. When one litigant refused to sign the formal settlement agreement presented by his attorney, the other moved for judgment under section 664.6. (10 Cal.4th at pp. 580-581.) The trial court denied the motion, following a line of cases which held the signature of the attorney alone was insufficient to create a binding settlement agreement for purposes of section 664.6. (10 Cal.4th at p. 581.)
 

 The Court of Appeal denied a petition for writ of mandate, and the Supreme Court issued an alternative writ to resolve the conflict among the
 
 *1163
 
 Courts of Appeal.
 
 (Levy
 
 v.
 
 Superior Court, supra,
 
 10 Cal.4th at p. 581.) It held the term “parties” in section 664.6 means the litigants themselves, and does not include their attorneys of record. (10 Cal.4th at p. 586, see also
 
 Johnson
 
 v.
 
 Department of Corrections
 
 (1995) 38 Cal.App.4th 1700 [45 Cal.Rptr.2d 740] [this court applied the same definition to oral agreements to settle where the litigant never personally informed the court he approved the agreement].)
 

 In
 
 Levy,
 
 the Supreme Court acknowledged the term “party,” as used in a number of procedural statutes, is commonly understood to mean the actual litigant as well as the litigant’s attorney of record. (10 Cal.4th at p. 583.) It noted the term “is also susceptible of a narrower meaning, namely the specific person or entity by or against whom legal proceedings are brought.”
 
 {Ibid.)
 
 The court turned to the intent of the Legislature in drafting section 664.6 to determine which definition of “parties” should prevail. (10 Cal.4th at pp. 582-583.) The high court concluded the latter definition applies when the “the subject of the statute may affect the substantial rights of the litigants themselves, . . .”
 
 {Id.
 
 at p. 583.) It reasoned that “[bjecause the settlement of a lawsuit is a decision to end the litigation, it obviously implicates a substantial right of the litigants themselves.”
 
 {Id.
 
 at p. 584.)
 

 Here, unlike
 
 Levy
 
 and
 
 Johnson,
 
 the court found that Misae Saunders authorized her husband, in addition to her attorney, to act on her behalf. Although
 
 Levy
 
 does not address the question whether the signature of a spouse and codefendant is sufficient to demonstrate assent to settlement terms for purposes of section 664.6, the court’s assessment of the intent of the legislation supports the conclusion it is not. The Supreme Court stated
 
 the Legislature “created a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met.
 
 Thus the statute requires the ‘parties’ to stipulate in writing or orally before the court that they have settled the case. The litigants’ direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. [Citations.] It also protects parties from impairment of their substantial rights without their knowledge and consent.”
 
 {Levy
 
 v.
 
 Superior Court, supra,
 
 10 Cal.4th at p. 585, italics added.)
 

 Because Misae Saunders did not participate in mediation nor sign the November 17, 1995, settlement agreement, we conclude the court erred in enforcing the settlement against her. We express no opinion whether Williams can litigate her agency theories in a different motion or separate
 
 *1164
 
 proceeding. (See
 
 Levy
 
 v.
 
 Superior Court, supra,
 
 10 Cal.4th at pp. 584-585, 586, fn. 5; and
 
 Cortez
 
 v.
 
 Kenneally
 
 (1996) 44 Cal.App.4th 523, 530 [51 Cal.Rptr.2d 671].) Given our resolution of this issue, we need not address the other claims of error.
 

 Disposition
 

 The judgment is reversed as to Misae Saunders. Defendant Saunders shall recover costs on appeal.
 

 Puglia, P. J., and Morrison, J., concurred.
 

 A petition for a rehearing was denied July 17, 1997, and the opinion was modified to read as printed above. Respondent’s petition for review by the Supreme Court was denied September 3, 1997.
 

 [1]
 

 The language of Mrs. Saunders’s brief suggests she appeals on behalf of herself and HBS, the corporation. She complains Lomeli was not authorized by the HBS board of directors to bind the corporation to the November 17,1995, settlement agreement. However, HBS did not file a notice of appeal, and its claims of error are not properly before us.
 

 [2]
 

 The other settlement terms included:
 

 a. HBS waived all claims against Williams and CSI;
 

 b. Depew relinquished any ownership interest in CSI and agreed to return his CSI shares to CSI;
 

 c. Depew agreed to dismiss with prejudice and file a satisfaction of judgment in Sacramento Superior and Municipal Court case No. 95CS00864 (a separate lawsuit);
 

 d. HBS kept its contract with the California Department of Corrections;
 

 e. CSI’s insurance carrier agreed to pay Williams $7,000;
 

 f. Williams gave up her interest in HBS and agreed to return her HBS stock; HBS agreed to indemnify her for any liability to third parties arising from her relationship with HBS and the individual defendants;
 

 
 *1161
 
 g. The parties agreed to mutual restraining orders;
 

 h. The parties agreed to pay their own attorney fees and costs;
 

 i. Williams agreed to dismiss her complaint with prejudice; HBS agreed to dismiss its cross-complaint with prejudice;
 

 j. The parties agreed to keep the settlement confidential; and
 

 k. Each party agreed to pay one-fifth of the mediator’s fee.
 

 The parties had complied with all the terms of settlement except execution of the formal release at the time of the hearing on Williams’s motion for judgment.
 

 [3]
 

 Civil Code section 1542 states: “A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.”
 

 [4]
 

 Code of Civil Procedure section 664.6 provides: “If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.”
 

 All undesignated statutory references are to the Code of Civil Procedure.
 

 [5]
 

 Williams raised the jurisdictional question again in respondent’s brief. We reaffirm our previous ruling that Saunders complied with the requirements of California Rules of Court, rule 1(a).