Filed 3/19/13  Bajan v. Mikos CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MATTHEW BAJAN, JR., et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>JAN MIKOS et al.,<br><br>    Defendants and Appellants. | D061380<br><br><br>(Super. Ct. No. 37-2008-00094754-<br> CU-FR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. L. Strauss, Judge.  Reversed.

Matthew Bajan, Jr. (Matthew) and Boguslaw Bajan (Boguslaw) (collectively Brothers) successfully moved for a judgment under Code of Civil Procedure section 664.6 (section 664.6) to enforce a written settlement agreement among multiple parties, including Jan and Halina Mikos.  The Mikoses appeal, contending the court erred in entering judgment under section 664.6 because the Mikoses revoked the settlement

agreement before all parties personally signed the agreement and because the agreement was the result of undue influence, economic duress, and mistake.

We conclude the judgment must be reversed because of the lack of a timely signature by one of the settling parties (Boguslaw). This conclusion means only that the settlement agreement is not enforceable through the expedited section 664.6 procedure. It does not preclude the enforcement of the written settlement agreement through other procedural means, including an amendment of the pleadings or an independent breach of contract action. Based on our holding, we do not reach the Mikoses' undue influence/mistake contentions and omit a full discussion of these contentions in the opinion.

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The parties' participation in the multi-party settlement arose from the Brothers' lawsuit against Jan and Halina Mikos and the estate and trust of Henry Lisowski (the Mikos/Lisowski lawsuit). In their lawsuit, the Brothers alleged the Mikoses and Lisowski engaged in wrongful conduct (including fraud and forgery) to alter their father's will and unlawfully converted their father's estate assets that should have gone to the Brothers. The Brothers also alleged these defendants were responsible for their father's death. They alleged they first discovered the wrongful conduct by the Mikoses and Lisowski when a police detective contacted them with relevant information while the detective was investigating the death of Lisowski's wife (Rosa). Lisowski was thereafter convicted of murdering Rosa, and Lisowski committed suicide while awaiting sentencing for Rosa's murder.

2

Numerous other individuals also sued Lisowski's trust and estate, including Rosa's survivors (who brought a wrongful death lawsuit) and various creditors and other claimants.

On October 4, 2011, numerous parties who had claims against the Lisowski estate and trust engaged in a lengthy mediation of all claims asserted in the various lawsuits, including the Brothers' action against the Mikoses and Lisowski, and the wrongful death action brought by Rosa's survivors. The all-day mediation was conducted by attorney Douglas Barker. The Mikoses were physically present at all times and were represented by counsel. Matthew was physically present, but Boguslaw, who is a judge in Poland, was not present. However, the same counsel represented both Brothers, and Boguslaw was in telephone contact with Matthew and counsel during the settlement negotiations. All other parties and their counsel were physically present except Jessica Ramos, Rosa's adult daughter.

At the end of that day (October 4), all parties agreed to a detailed comprehensive multi-party written settlement agreement entitled "AGREEMENT OF SETTLEMENT AND MUTUAL GENERAL RELEASE" (Settlement Agreement). The Settlement Agreement contained provisions making clear the agreement was intended as a final resolution of all disputes and controversies between and among the parties. The Settlement Agreement allowed the parties to sign the agreement in counterparts, and each party represented that he or she reached agreement with the assistance or advice of counsel, had made an investigation into the facts, and understood the contents of the agreement.

3

Under the written settlement terms, the Brothers agreed to release their claims against the Mikoses (including waiving a prior monetary sanctions award) in exchange for the Mikoses' transferring their home into an irrevocable trust which provided the Mikoses with a life estate with the remainder to the Brothers upon the death of both Mikoses. The Settlement Agreement also contained numerous detailed provisions about all parties' rights to the assets of the Lisowski estate and trust.

The Settlement Agreement was signed on October 4, 2011 by: (1) the executor of Lisowski's estate (and the executor's counsel); (2) the successor trustee and beneficiary of Lisowski's trust (and his counsel); (3) Matthew, who signed the agreement twice: once in his individual capacity and once "as agent under power of attorney for Boguslaw Bajan"; (4) the Brothers' counsel; (5) the Mikoses; (6) the Mikoses' counsel; (7) Rosa's adult son; (8) the guardian ad litem for Rosa's two minor children; and (9) the guardian ad litem's counsel.[1]

About two weeks later, on October 17, the Mikoses notified the court and the Brothers' counsel by letter that they intended to revoke or rescind their consent to the Settlement Agreement. They claimed their agreement to the settlement resulted from

---

[1] Although Jessica Ramos (Rosa's adult daughter) was not present at the time of the signing, there is evidence showing she signed and dated the Settlement Agreement later that evening. Based on the court's order, we presume the court found this evidence credible and find substantial evidence in the record supporting this conclusion. We thus omit further discussion of the Mikoses' claim that Jessica did not timely sign the agreement.

4

"undue influence and mistake" and that they did not understand the alternatives and consequences of the settlement before signing the agreement.

Two weeks later, on November 2, the Brothers filed a motion under section 664.6, requesting the court enter judgment on, and enforce, the Settlement Agreement. The Brothers attached the Settlement Agreement that contained personal signatures from all parties, except for Boguslaw's personal signature. As noted, Matthew had signed the Settlement Agreement on behalf of Boguslaw. The Brothers also submitted the declaration of their counsel who stated that during the multi-party settlement negotiations, the Mikoses were represented at all times by their own attorney and the Mikoses' attorney was fully aware of the relevant facts through litigation motions and extensive discovery.

The Mikoses opposed the motion. They argued the Settlement Agreement was not enforceable under section 664.6 because two of the parties (Jessica Ramos and Boguslaw) did not personally sign the agreement, arguing that "case law clearly holds that in order to be entitled to the expedited relief under [section] 664.6, all parties must personally sign." Relying on paragraph 3.1 of the Settlement Agreement, they also argued that they revoked the agreement before it became effective. Paragraph 3.1 states: "This Agreement shall become immediately effective at the time that this Agreement is signed by all of the parties set forth above . . . ."

The Mikoses also requested the court to rescind the agreement because it was the product of undue influence, economic duress, and mistake of fact. In support of this

5

argument, they submitted their lengthy declarations in which they said they are elderly, not in good health, and were unfairly pressured to sign the Settlement Agreement.

In reply, the Brothers argued the Mikoses' October 17, 2011 revocation letter was ineffective because it was communicated after the Settlement Agreement was fully executed on October 4, 2011. They also submitted a new copy of the Settlement Agreement with Boguslaw's personal signature, dated November 8, 2011. This new copy of the Settlement Agreement contained an additional typewritten signature line at the bottom of page 9 with Boguslaw's signature. The Brothers also submitted a copy of a notarized "SPECIAL POWER OF ATTORNEY" document, executed on September 28, 2011 by Boguslaw, in which Boguslaw authorized Matthew to act on his behalf with respect to the Mikos/Lisowski litigation.

The Brothers additionally submitted their counsel's declaration who stated in relevant part: "At the [October 4] mediation, it was explained to the mediator . . . and counsel for the various parties, that [Matthew] had authority by virtue of a Special Power of Attorney which had been signed and notarized, to represent his brother Boguslaw's interests at the mediation. A copy of the Power of Attorney was provided to all counsel who requested it. [¶] . . . [¶] . . . During the mediation, [Matthew] phoned his brother [Boguslaw] in Poland, and spoke with him concerning the offers and counter offers that were being made, both with respect to the claims against Mr. and Mrs. Mikos, and the Lisowski trust and estate. [¶] . . . [¶] . . . [After the mediation, the Settlement Agreement] was sent by Federal Express to Boguslaw in Poland. He signed and returned the Agreement."

6

After considering the parties' written submissions and holding a hearing, the court granted the Brothers' motion to enforce the settlement and entered judgment on the Settlement Agreement under section 664.6.

The Mikoses appeal.

## DISCUSSION

The Mikoses contend the court erred in enforcing the written Settlement Agreement under section 664.6 because: (1) the agreement was not personally signed by Boguslaw before the Mikoses revoked the agreement; and (2) the settlement must be vacated because of undue influence, economic duress or mistake of fact. Because we conclude the first argument has merit we do not reach the second argument.

### I. *Summary of Applicable Legal Principles*

The Legislature enacted section 664.6 to provide an expedited procedure to enforce a settlement agreement executed during pending litigation. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.) The procedure is available only when "certain requirements that decrease the likelihood of misunderstandings are met." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 585 (*Levy*); *Conservatorship of McElroy* (2002) 104 Cal.App.4th 536, 548-549.) Section 664.6 is not the exclusive procedure for enforcing a settlement agreement. (*Levy, supra*, 10 Cal.4th at p. 586, fn. 5.) Even when the statutory procedure is unavailable, a party may enforce a settlement agreement through other means such as a motion for summary judgment or a breach of contract action. (*Ibid.*; *Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1122 (*Gauss*).)

7

Section 664.6 provides, in relevant part: "If parties to pending litigation stipulate, in a writing signed *by the parties* outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Italics added.)

In *Levy*, the California Supreme Court defined the statutory term " 'parties' " to mean "the specific person or entity by or against whom legal proceedings are brought." (*Levy, supra*, 10 Cal.4th at p. 583.) Under this definition, the court held that a written settlement agreement is unenforceable under section 664.6 unless a party "personally" signs the agreement. (*Id.* at p. 584.) Because the settlement agreement in *Levy* was signed by the litigant's attorneys but not by the litigant personally, the court held the agreement could not be enforced under the summary procedure of section 664.6. (*Id.* at p. 586.) Under this holding, an attorney's signature does not satisfy the signature requirement even if the party gave his or her attorney the specific authority to enter into the settlement. (See *id*. at pp. 583-584.)

In interpreting section 664.6 in this manner, the *Levy* court reasoned that "settlement is such a serious step that it requires the client's knowledge and express consent." (*Levy, supra*, 10 Cal.4th at p. 583.) The court further observed that a party-signature requirement will "tend[ ] to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the

8

settlement.  [Citations.]  It also protects parties from impairment of their substantial rights without their knowledge and consent."  (*Id.* at p. 585, fn. omitted.)

California courts have since strictly applied *Levy*'s holding and have consistently declined to recognize any exceptions to the rule that litigants themselves must sign a written settlement agreement to permit enforcement under section 664.6.  (*Gauss, supra*, 103 Cal.App.4th at pp. 1116-1123; *Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 37 (*Sully-Miller*); *Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162-1164 (*Williams*); *Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 716.)  Under these holdings, section 664.6 is not available to enforce a settlement agreement if a party did not personally sign the agreement, even if the agreement was signed by the party's agent and the party expressly authorized the agent to enter into a settlement on its behalf.  (See *Gauss, supra*, 103 Cal.App.4th at pp. 1116-1122; *Williams, supra*, 55 Cal.App.4th at pp. 1162-1164.)  Moreover, the statutory requirement of a "writing 'signed by the parties' " means all the parties to the settlement agreement, including "the parties seeking to enforce the agreement under section 664.6 and against whom the agreement is sought to be enforced."  (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 305.)

## II.  *Analysis*

The Brothers acknowledge *Levy*'s party-signature requirement is a prerequisite to section 664.6 enforcement and recognize that Boguslaw did not initially personally sign the Settlement Agreement.  However, they argue the Settlement Agreement was nonetheless enforceable under section 664.6 because:  (1) Matthew signed the agreement

9

on Boguslaw's behalf under a written and notarized power of attorney; and (2) any insufficiency in satisfying the party-signature requirement was remedied when Boguslaw signed the Settlement Agreement about one week after the Brothers filed their section 664.6 motion.

Under well settled law, neither argument has merit.

First, the fact that Matthew signed the settlement agreement under a power of attorney is insufficient to satisfy *Levy*'s personal-signature requirement. The Special Power of Attorney signed by Boguslaw grants Matthew the power to act as Boguslaw's "attorney-in-fact . . . for the purpose of representing [Boguslaw] . . . in all aspects of the [Mikos/Lisowski] litigation" and provides Matthew "full authority to act in any manner necessary. . . , including the power to prosecute, settle and otherwise resolve the litigation . . . ." Under California law, a person acting under a written power of attorney generally has "the same rights and privileges that would be accorded the principal if the principal were personally present and seeking to act." (Prob. Code, § 4300.)

Relying on the broad language of the Special Power of Attorney and California law governing powers of attorney, the Brothers argue that because Matthew had the full written authority to bind Boguslaw to the Settlement Agreement and act on his behalf in the litigation, Matthew's signature should be sufficient to satisfy section 664.6's party-signature requirement.

Although the argument is persuasive when considered in isolation, we must evaluate the factual and legal issues in the specific statutory context in which this case arises. A person acting under a written power of attorney is essentially acting in the role

of an authorized agent. (See Prob. Code, § 4051.) As with a contract signed under a power of attorney, a contract signed by an agent with authority to act on the principal's behalf is binding on the principal. (Civ. Code, §§ 2316, 2330, 2337.) However, the *Levy* court and its progeny have made clear that an agency relationship—even an express one—is insufficient to satisfy section 664.6's party-signature requirement. The courts have consistently rejected traditional agency analysis with respect to the enforceability of a settlement agreement under the section 664.6 procedure. (See *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1255 [" '*Levy* . . . prevent[s] respondents from relying on agency principles to satisfy the requirements of section 664.6' "]; *Gauss, supra*, 103 Cal.App.4th at pp. 1118-1119; *Williams, supra*, 55 Cal.App.4th at pp. 1162-1164.) Even where a party gives a third party the specific power to settle a matter on his or her behalf, the courts have held the third party's signature on a settlement document is insufficient to permit enforcement under section 664.6. (*Gauss, supra*, 103 Cal.App.4th at pp. 1118-1119.)

In this regard, this case is indistinguishable from *Gauss, supra*, 103 Cal.App.4th 1110. In *Gauss,* the defendant expressly authorized in writing a third party entity to act as its exclusive agent in the defense and settlement of asbestos-related claims alleged against it. (*Id.* at p. 1113.) When the plaintiff sought to enforce a settlement agreement signed by the specially designated agent, the Court of Appeal held that a settlement agreement signed by the designated agent on the defendant's behalf could not be enforced under section 664.6 because it had never been signed by the defendant personally. (*Id.* at pp. 1116-1123.) Noting that "*Levy* itself holds that the signature of a *duly authorized*

11

attorney, who acts as an agent of the client [citation] does not suffice to permit enforcement of a settlement under section 664.6" (*id.* at p. 1119), the *Gauss* court stated that "[s]ection 664.6, as construed by the Supreme Court in *Levy,* simply does not permit the use of its summary, expedited procedures to enforce a settlement agreement signed only by a party's agent." (*Id.* at p. 1121.)

Similarly, in *Williams,* the court held that even assuming the defendant (who was out of the country) expressly gave authority to her husband and codefendant to settle the case on her behalf, the lack of the defendant's personal signature on the settlement agreement precluded enforcement under section 664.6. (*Williams, supra*, 55 Cal.App.4th at pp. 1160, 1162-1164; see also *Murphy v. Padilla, supra*, 42 Cal.App.4th at p. 716 [*Levy* precludes reliance on agency principles to satisfy the requirements of the statute].)

The Brothers argue that a conclusion that section 664.6 is unavailable here would "undercut and abrogate the statutory scheme created by the [L]egislature regarding powers of attorney," particularly where the absent party is "aged, or disabled, or lives in another country."

Although this policy argument is compelling, we are required to enforce statutes as they are written and as they are interpreted by the California Supreme Court. Under the holding and rationale of *Levy*, a party—and not the party's agent—must sign the settlement agreement for the agreement to be enforceable under the expedited procedures of section 664.6. To the extent this result is inconsistent with other important public policies, we are bound by the holdings of our high court. Moreover, underlying the Brothers' policy argument is their suggestion that the *Levy* rule unfairly eradicates

12

California's power-of-attorney rules. This premise is faulty. The *Levy* rule does not affect the full enforceability of a settlement agreement executed by an attorney-in-fact under a power of attorney. The rule instead precludes only one statutorily-created procedural vehicle for enforcing a settlement agreement. Moreover, this is not a case where the party was incapacitated in the sense that he could not have executed the settlement agreement in a timely fashion. The record shows that Boguslaw was involved in the settlement discussions through the telephone and there was no evidence that he did not have the ability to promptly provide a signature through technological or other means (e.g., fax machine or email or rapid mail service).

The Brothers alternatively contend the court properly granted their section 664.6 motion because the record shows that all parties eventually signed the agreement. However, it is undisputed that Boguslaw's signature was not obtained until *after* the Mikoses gave written notice that they were revoking their acceptance of the agreement and several weeks *after* the Brothers moved for enforcement of the agreement under section 664.6. The Mikoses' revocation of their consent to the agreement eliminated the manifestation of mutual consent that is required by section 664.6. The Mikoses' letter revoking their consent before all party-signatures had been obtained on the written Settlement Agreement precluded enforcement under the expedited procedure of section 664.6.

One of the purposes underlying *Levy*'s strict party-signature requirement is to minimize at a summary hearing the possibility of conflicting interpretations of the settlement agreement and of the validity of each party's acceptance of the agreement.

13

(See *Levy, supra*, 10 Cal.4th at p. 585.) In this case of an initial signature by an agent followed by an attempted contract revocation by the opposing side, the court was required to resolve various preliminary factual questions related to the contractual enforcement issues, such as the nature and scope of the agency and the validity of the revocation. The Legislature did not intend the expedited section 664.6 procedure to be used as a substitute for contract enforcement actions. The unilateral addition of Boguslaw's signature after the Mikoses had revoked their consent and after the Brothers had filed their section 664.6 motion did not bring this matter within section 664.6's strict statutory requirements. (See *Sully-Miller, supra*, 103 Cal.App.4th at p. 37.)

In this regard, the Brothers' reliance on *Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421 (*Elyaoudayan*) is unhelpful. Under section 664.6, a settlement agreement is enforceable if parties to pending litigation personally sign the settlement agreement *or* the parties personally stipulate to the settlement before the court. In *Elyaoudayan*, an oral settlement agreement was recited on the record before the court and was personally consented to by some, but not all, of the parties. (*Elyaoudayan, supra*, at pp. 1424-1425.) The parties who were not present in the courtroom later signed a stipulation attaching a transcript of the court proceeding at which the settlement was recited. (*Id.* at p. 1426.) The Court of Appeal held that, because "[a]ll parties agreed to the settlement in one form or the other or both," it was enforceable under section 664.6 notwithstanding the " 'mix and match' approach to the *manner* of agreement." (*Id.* at p. 1432.)

14

We agree with this principle. But in *Elyaoudayan*, unlike here, there were no facts showing that a party sought to revoke the agreement *before* the remaining parties' personal signatures were obtained on the transcript of the oral hearing. The issue here is whether obtaining a party's signature *after* the opposing parties had revoked their consent is sufficient to allow enforcement under section 664.6. Applying well settled law in this state, enforcement under section 664.6 is not permitted under these circumstances.

*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289 is also distinguishable. *Provost* held that when a party to pending litigation is a corporation or other similar entity that must act through individuals, the entity may appoint an employee (with appropriate knowledge and position) as the "authorized representative" of the party and section 664.6's party-signature requirement is satisfied if this representative signs the settlement agreement. (*Provost, supra*, at pp. 1296-1297.) In so holding, the *Provost* court distinguished *Gauss*, by explaining that in *Gauss* the corporate party appointed a third party agent, rather than a corporate employee, as the authorized representative in the litigation and settlement negotiations. (*Provost, supra*, at p. 1296.) *Provost* is inapplicable here because each of the Brothers is an individual rather than an entity. As in *Gauss* and *Williams*, an agent's signature on a settlement agreement is insufficient to satisfy section 664.6's personal signature requirement, even if the agent was specifically provided with settlement powers and even if the agent was a codefendant in the action.

Our conclusion that the lack of Boguslaw's timely personal signature precludes enforcement under section 664.6 does not mean the Settlement Agreement is invalid or unenforceable. " '[T]he statutory procedure for enforcing settlement agreements under

15

section 664.6 is not exclusive. It is merely an expeditious, valid alternative statutorily created. [Citation.] Settlement agreements may also be enforced by motion for summary judgment, by a separate suit in equity or by amendment of the pleadings . . . .' " (*Gauss, supra*, 103 Cal.App.4th at p. 1122.)

We emphasize that the issues whether the parties' consent to the Settlement Agreement was properly manifested and whether the agreement is binding on the Mikoses under California law are not before us. Specifically, our conclusion that Matthew's signature on behalf of his brother was inadequate to permit enforcement under section 664.6 has no relevance to the issue whether Matthew had the lawful authority to sign the Settlement Agreement on Boguslaw's behalf, thus binding the parties under contract principles and rendering the Mikoses' revocation invalid. The record supports that Boguslaw gave Matthew the specific authority under the power of attorney to handle all aspects of the litigation, including settling the litigation. Moreover, Boguslaw personally participated in the settlement negotiations by telephone. Additionally, there is substantial evidence supporting the court's implied finding that when the Mikoses signed the agreement they were represented by counsel and had the time to reflect and consider the settlement terms.

DISPOSITION

Judgment reversed.  Each party to bear its own costs.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.


17