Filed 12/21/20  Pickard & Butters Construction v. County of Santa Cruz CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PICKARD & BUTTERS CONSTRUCTION, INC.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF SANTA CRUZ,<br><br>    Defendant and Respondent,<br><br>    and<br><br>NORTH AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>    Intervener and Respondent. | H046816<br>(Santa Cruz County<br> Super. Ct. No. 16CV01495) |

The trial court entered an order under Code of Civil Procedure section 664.6 enforcing a settlement agreement executed by a surety company as the assignee of plaintiff's rights under an indemnity agreement; a judgment of dismissal followed. Plaintiff appeals, arguing that the trial court in Santa Cruz County lacked authority to enforce the settlement because issues implicating the indemnity agreement's enforceability were being litigated in an action before the San Bernardino County Superior Court.  For the reasons stated here, we will affirm the judgment.

# I. BACKGROUND

The County of Santa Cruz awarded plaintiff Pickard & Butters Construction, Inc. (PBC) a public works construction contract exceeding $1.6 million. Acting as surety, North American Specialty Insurance Company (North American) issued payment and performance bonds on behalf of PBC in connection with the project. As consideration for those and other bonds issued on its behalf, PBC executed a general indemnity agreement in favor of North American. The agreement authorizes North American to demand that PBC deposit money as collateral security on the bonds upon a notice of claim or lawsuit asserting liability. The agreement assigns PBC's rights under the project contracts to North American upon PBC's default, and defines default as including failure to deposit any required collateral security. The agreement authorizes North American "to decide and determine in its sole discretion whether any claim, liability, suit or judgment made or brought against [North American or PBC] on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and [North American]'s decision shall be final, binding and conclusive upon [PBC]," and authorizes North American as PBC's attorney-in-fact to execute any release required to reach a claim settlement.

North American received claims against a number of PBC's bonded projects beginning in April 2015. Between August 2015 and October 2018, North American investigated and paid over 100 claims totaling nearly $1.4 million on PBC's obligations, including $605,371 to resolve 29 bond claims on the Santa Cruz County project. North American sent PBC a written demand in March 2016 to deposit $1.4 million as collateral security to protect North American against loss under the indemnity agreement. PBC did not post collateral or respond in writing to the demand, and in December 2018 North American sued PBC in San Bernardino County Superior Court for breach of the indemnity agreement and reimbursement. In that action, North American sought

2

$1,397,415 as damages for bond payments made for several projects, including the $605,371 paid on the Santa Cruz County project.

The dispute between PBC and Santa Cruz County arose in 2014 over change orders and delay. The County paid PBC a total of $1,349,859, and in December 2015 it denied PBC's claim for $894,075 (the contract balance plus changes totaling $433,105 and $460,970 in damages). In 2016, PBC filed the instant action in the Santa Cruz County Superior Court for money due, and the County cross-complained for breach of contract. North American declined PBC's requests to intervene in the lawsuit to jointly prosecute PBC's claims against the County. The case proceeded through discovery, and the parties were prepared for trial at the November 2018 calendar call. No courtrooms were available, and trial was rescheduled for January 2019.

After PBC rejected the County's offer to settle in the instant case, the County approached North American in January 2019 regarding settling the matter on behalf of PBC. On January 11, 2019, the trial court granted North American's ex parte application to intervene based on the indemnity agreement, and North American filed a complaint in intervention asserting all claims held by PBC against Santa Cruz County. North American and the County entered into a written settlement, and on January 23, the day before the rescheduled trial calendar call, North American notified PBC that the matter had been settled and demanded that the lawsuit be dismissed with prejudice. The trial date was vacated, and a briefing schedule was set for North American's motion to enforce the settlement agreement under Code of Civil Procedure section 664.6.

North American argued in its motion that the settlement agreement should be enforced and the lawsuit dismissed because upon PBC's failure to comply with North American's demand for collateral, the indemnity agreement assigned PBC's rights against the County to North American, giving North American the right to settle the instant lawsuit. North American filed declarations (supported with documents) from a claims vice president, its attorney, and the County's attorney. North American argued in

3

the alternative that it was the real party in interest to any claims that PBC had against the County by virtue of the indemnity agreement's assignment clause, and it should therefore be substituted into the action in place of PBC. North American argued that PBC's defenses to North American's action in San Bernardino County and PBC's attorney's fee lien were irrelevant to the motion.

PBC argued North American was seeking to have the trial court summarily adjudicate "numerous vigorously disputed" material breach issues which "cannot be adjudicated in the context of this motion" and "must be fleshed out" in the San Bernardino case. PBC argued that the evidence, if developed and presented to the trier of fact in the San Bernardino case, would show that North American had materially breached the indemnity agreement by acting in bad faith in several ways: paying indemnity claims over PBC's objections; refusing to intervene at the outset to jointly prosecute PBC's lawsuits against project owners; and intervening and settling the instant case secretly after PBC incurred trial preparation costs. PBC argued those breaches excused obligations to perform and rendered the assignment to North American under the agreement unenforceable. PBC also argued that the court in the San Bernardino case could find the indemnity agreement unenforceable under the equitable doctrine of laches because North American sat on its rights for over three years during which time PBC incurred several hundred thousand dollars in litigation expenses related to multiple projects. PBC asserted the settlement was unjust because it was undertaken in secret, sabotaged PBC's right to go to trial, and the negotiated amount ($650,000) was less than half of what PBC was prepared to prove at trial. PBC urged that North American's claim to settlement funds was junior to the attorney's fee lien held by PBC's lawyer.

In a written decision following an unreported hearing, the trial court ruled: "The uncontradicted evidence admitted in support of the motion establishes that [PBC] breached its obligations under the Indemnity Agreement, at a minimum, by failing to pay amounts claimed by its subcontractors [and others] on the [Santa Cruz County] project

4

bonded by [North American]. Due to its obligation as surety, [North American] was required to pay the total amount of $605,371.33 to resolve those bonded claims. Thereafter, [PBC] failed to respond to [North American's] timely collateral demand. Accordingly, pursuant to the '*Assignment*' clause of the Indemnity Agreement, and because of [PBC]'s default, all its rights and claims against the County were assigned to [North American]. Further, pursuant to the '*Attorney-in-Fact*' provisions of the Indemnity Agreement, [PBC]'s default resulted in the appointment of [North American] to pursue all the claims currently asserted by [PBC] against the County in this action. This authorizes [North American] to settle and release such claims as [North American], in its 'sole discretion', may deem necessary."

The trial court specifically found that "enforcement of the settlement agreement, and dismissal of the County, does not in any manner prejudice or foreclose any bad faith breach of contract claim which [PBC] may now assert against [North American] either by Cross-Complaint in the action currently pending between these parties in San Bernardino County, or in an independent action against [North American]. To the extent [PBC] asserts that it will be deprived of the opportunity to recover damages suffered exclusively by [PBC], caused solely by the conduct of the County, [PBC] failed to present any argument or authority as to why those damages would not now be recoverable against [North American] – assuming [North American] wrongfully asserted and exercised its 'sole discretion to settle' rights under the Indemnity Agreement." Explaining its reasoning, the trial court stated, "In the final analysis, because [North American] paid the bonded claims, and because the Indemnity Agreement provides the mechanism for [North American] to recover those payments, [North American] has the enforceable right to settle the subject lawsuit and protect its recovery rights. In the absence of enforcement of this right, and if [PBC] were permitted to proceed to trial against the County, there is a risk that [PBC] would recover nothing, or less than the amounts of [North American]'s

5

bond payments, and [North American] would then be without recourse against a financially responsible party."

The trial court recognized the equitable appeal of subjecting the settlement proceeds to PBC's attorney's fee lien, given that North American had intervened "at the [11th] hour" only after PBC's attorney had prepared the case for trial. But it considered the argument premature in light of authorities holding that attorney lien claims must be brought in a separate post-judgment action.

The court entered a dismissal with prejudice after North American confirmed receipt of settlement funds. This appeal followed. As in the trial court, the County joins in the arguments urged by North American.

## II. DISCUSSION

Code of Civil Procedure section 664.6 provides a summary procedure for incorporating into a judgment a settlement reached by parties to a lawsuit: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (*Ibid.*) The trial court may also retain jurisdiction over the parties to enforce the settlement. (*Ibid.*)

To determine whether the parties entered into an enforceable settlement, the trial court may receive testimony orally or by declaration. (*Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533.) When the validity of a settlement agreement rests on the trial court's factual findings, we review those findings for substantial evidence. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911; *Kohn*, at p. 1533.) Legal questions arising in the context of a motion to enforce settlement are subject to our independent review. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141 [whether a certain or undisputed state of facts establishes a contract]; *Williams v.*

6

*Saunders* (1997) 55 Cal.App.4th 1158, 1162 [construction and application of Code of Civ. Proc., § 664.6].)[1]

## A. THE TRIAL COURT DID NOT ADJUDICATE ISSUES PENDING BEFORE THE SAN BERNARDINO COURT

PBC argues that the trial court committed reversible error by making certain findings which summarily adjudicated issues pending in the San Bernardino action. In PBC's view, the trial court in effect determined that North American did not materially breach the covenant of good faith and fair dealing and did not engage in objectively unreasonable conduct by finding that PBC "does not dispute" that the indemnity agreement "controls [the parties'] rights and obligations," the "uncontradicted evidence" admitted in support of the motion establishes that PBC breached its obligations under the agreement, and PBC's claims and rights against Santa Cruz County were assigned to North American because of PBC's default. PBC repeats on appeal the arguments it made to the trial court: that in the context of a motion under Code of Civil Procedure section 664.6, the trial court had no authority to summarily adjudicate issues to be decided in the San Bernardino action, and in doing so, it exceeded its own jurisdiction and usurped the jurisdiction of the San Bernardino County Superior Court.

PBC ignores the expressly limited scope of the trial court's order. In granting North American's motion to enforce the settlement, the trial court did not make any findings regarding good faith or bad faith conduct; nor did it presuppose or summarily adjudicate whether North American engaged in objectively unreasonable conduct or

[1] An appellant's appendix may not contain documents that were not filed in the trial court. (Cal. Rules of Court, rule 8.124(g); *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 592, fn. 11.) North American asks that we strike from appellant's appendix a letter and attachments, including the settlement agreement not considered by the trial court, and PBC does not argue otherwise. The documents are accordingly stricken, and we do not consider them in our review of the case. We note, however, that North American did not object in the trial court to PBC representing in its points and authorities that the case was settled for $650,000. The amount of settlement is thus not beyond our consideration.

7

otherwise materially breached the covenant of good faith and fair dealing. The trial court did not address the laches argument PBC intends to advance in the San Bernardino case, and it made no findings, implicit or explicit, that would bind the San Bernardino court. A court decision does not stand for a proposition not considered. (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 332.) The trial court expressly stated that its decision does not prejudice or foreclose any bad faith breach of contract claims PBC wishes to assert against North American, and that its decision should not "be construed as a final determination by the Court of the merits of any factual or legal issue which may be subsequently litigated in a separate proceeding between [PBC] and [North American]."

The trial court, relying on the indemnity agreement and North American's evidence of PBC's default, found only that the *settlement agreement* was enforceable. The trial court's ruling was based on substantial evidence supporting a valid assignment as a matter of law, rendering the settlement agreement enforceable. (See *Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096 [an assignment encompasses all rights and remedies held by the assignor]; *McDermott, Will & Emery v. Superior Court* (2000) 83 Cal.App.4th 378, 382 ["An assignment of a claim 'pass[es] title to a cause of action from one person to another' "].)

As we understand the trial court record, in its opposition to North American's motion PBC did not seek to *prove* that the indemnity agreement was an unenforceable contract or that North American had materially breached the implied covenant of good faith and fair dealing. Indeed, PBC argued "[t]he claims and counter-claims regarding [North American's conduct] cannot be adjudicated by the [Santa Cruz] court in the context of this motion" and "must be fleshed out in the prosecution of the San Bernardino case." In a declaration opposing North American's motion, PBC's president suggested that the evidence "to be developed in the San Bernardino case" would establish that North American engaged in multiple acts of bad faith and objectively unreasonable

8

conduct.  Even if such evidence were to be developed and could be considered as evidence of North American's bad faith in the instant case, it does not negate the substantial evidence of PBC's default and assignment supporting the trial court's decision here.  (*Crawford v. Southern Pacific Co*. (1935) 3 Cal.2d 427, 429 [substantial evidence review "begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support" the decision].)

PBC's authorities do not support the view that a trial court exceeds its powers by enforcing a settlement while issues regarding the parties' rights and obligations under an indemnity agreement are pending before a different court.  " '[I]t is not the duty of the surety to protect the principal as if the principal were an insured under an insurance policy.' " (*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co*. (1996) 47 Cal.App.4th 464, 483 (*Arntz*).)  The *Arntz* court found that under an indemnity agreement and its implied covenant of good faith and fair dealing a surety could not recover takeover expenses from its indemnitor without a good faith belief that the expenses were " 'desirable or necessary.' " (*Id*. at pp. 482–484.)  But *Arntz* does not stand for the proposition that a surety's good faith must be analyzed before enforcing a settlement under Code of Civil Procedure section 664.6.  Nor does any of PBC's other authorities hold that a trial court lacks authority to enforce a settlement under Code of Civil Procedure section 664.6 where, as here, the surety has brought a separate action to enforce the indemnity agreement:  *Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 566 (trial court is implicitly authorized to interpret the terms and conditions of a settlement when ruling on a motion under Code of Civ. Proc., §  664.6); *Corkland v. Boscoe* (1984) 156 Cal.App.3d 989 (enforcing written out-of-court settlement after determining disputed terms); *Haldeman v. Boise Cascade* (1985) 176 Cal.App.3d 230 (determining client had authorized attorney to settle on her behalf); *Malouf Bros. v. Dixon* (1991) 230 Cal.App.3d 280 (determining whether party complied with terms of settlement); *Skulnick v. Roberts Express, Inc*. (1992) 2 Cal.App.4th 884 (determining whether party

9

waived indemnification rights as part of settlement).  The trial court here agreed that the San Bernardino court is the appropriate forum for PBC to assert its bad faith breach of contract claims, and it carefully crafted an order to assure that PBC may proceed in the San Bernardino case without the instant settlement prejudicing its defenses and counter-claims.

**B.    THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY ENFORCING THE SETTLEMENT AGREEMENT**

Our Supreme Court explained in *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658 that entry of judgment under Code of Civil Procedure section 664.6 "is a judicial act that a court has discretion to perform," and the trial court " 'cannot surrender its duty to see that the judgment to be entered is a just one, nor is the court to act as a mere puppet in the matter.' " (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court*, at p. 664.)  Citing that authority, PBC argues that the trial court should have rejected the settlement agreement as manifestly unjust because North American sabotaged PBC's right to trial and settled PBC's claims in secret for an amount to satisfy North American's own interest, which was less than half the amount PBC was ready to prove against the County at trial.  PBC further argues that the possibility of recovering damages in a separate action against North American is not an adequate substitute for the opportunity to adjudicate its claims against the County now.

Mindful of our deferential standard in reviewing the trial court's exercise of discretion, we see no manifest injustice compelling rejection of the settlement.  The County approached North American regarding settlement, and settled for an amount greater than the earlier offer rejected by PBC.  In a declaration supporting the enforcement motion, a vice president for North American stated that the surety entered into settlement negotiations with the County because it was uncertain that an award against the County at trial would be greater than the County's settlement offer.  He also expressed that PBC had failed to honor the terms of the indemnity agreement; PBC had

10

questioned North American's entitlement to the full amount of any judgment PBC received; and if PBC were to lose at trial and be unable to satisfy its indemnity obligations, PBC might file for bankruptcy. North American's concerns are not improper or unreasonable. Despite the settlement of PBC's lawsuit against the County, PBC retains the ability to pursue any damages arising from the indemnity agreement by way of separate action against North American.

### III. DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

_____

GROVER, J.



_____

GREENWOOD, P.J.



_____

BAMATTRE-MANOUKIAN, J.



**H046816 - *Pickard & Butters Construction, Inc. v. County of Santa Cruz et al.***