Filed 7/21/21  Salman v. Emerson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GENENE A. SALMAN, | |
| Plaintiff and Respondent, | G059659 |
| v. | (Super. Ct. No. 20V001680) |
| ORION V. EMERSON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Carol L. Henson, Judge.  Affirmed.

Orion V. Emerson, in pro. per., for Defendant and Appellant.

Siddiqui Law, Omar A. Siddiqui and Daniel M. Josephson for Plaintiff and Respondent.

\*          \*          \*

Following a hearing, a trial court issued a domestic violence restraining order for the protection of plaintiff Genene A. Salman. The restrained party, defendant Orion V. Emerson (Salman's brother), appeals from the court's order.

Emerson argues the evidence does not support a conclusion that he harassed Salman. However, there is substantial evidence in the record to support the trial court's finding of fact. Thus, this court affirms the trial court's restraining order.

I

STATEMENT OF FACTS AND THE CASE

Starting in about 2007, Emerson began e-mailing his sister and mocked her religion (Islam). Salman asked Emerson to stop, but Emerson continued to contact Salman through e-mail and other electronic means.

In 2017, Emerson created a website called DouchebagsExposed.com, in which Emerson claimed Salman was anti-Semitic.

In 2019, there were widely publicized mass shootings at mosques in New Zealand, which resulted in numerous deaths. Emerson sent an e-mail to Salman stating: "'New Zealand was Justified.'"

In February 2020, Salman had been working for about four years as an assistant professor at a local college of pharmacy. The dean of the school received a letter, purportedly from a Jewish student, who claimed that Salman had made anti-Semitic statements. The college investigated the matter.

In August 2020, some of Salman's coworkers, including the dean, received an e-mail with a link to DouchebagsExposed.com. The website claimed Salman supports terrorists. Salman contacted the police, who advised her to get a restraining order.

On August 26, 2020, Salman received an e-mail from Emerson. The e-mail stated: "You are a narcissist! You act as if you are moral and turn things on others and act as if they are immoral. Let's go to court Narcissist!"

2

On August 26, 2020, Salman received another e-mail from Emerson. The e-mail stated: "Make the site, post my words. I'll rebut it with all the evidence on my own site and show youre [*sic*] full of sh\*t."

On August 28, 2020, Salman received an e-mail from Emerson. The e-mail stated: "Aww the Muzzie Brotherhood aww. Lol you are a pathetic Muhammadan."

On August 28, 2020, Salman received another e-mail from Emerson. The e-mail stated: "You call everyone evil - said the immature GIRL who's in a cult about going around murdering people, not letting people date, murdering apostates, murdering gays. [¶] YOU ARE THE ONE IN THE EVIL GROUP. AND YOU WORK FOR THESE PEOPLE."

On September 5, 2020, Salman received an e-mail from Emerson. The e-mail stated: "You are just a f\*cking evil b\*tch that looked at me as competition and wanted to beat me at everything. [¶] I remember you just insulting me calling me ugly, and then claiming I was talking about you and all this. You referred to me as evil and that I was going to hell on numerous occasions. You are just a f\*cking idiot then and now. All you can do is regurgitate things - but not think or comprehend. You have no insight into anything. You are just like a mindless robot. [¶] This is why you are a pharmacist not a software engineer like me. You need to be in a job where you systemize and memorize, not conceptualize and critically think. You are a very stupid person on many levels."

On September 5, 2020, Salman received another e-mail from Emerson. The e-mail stated: "Still waiting for the lawsuit . . . ."

On September 5, 2020, Salman received another e-mail from Emerson. The e-mail stated: "Still waiting for this 'defamation' lawsuit . . . f\*cking b\*tch."

3

*Court Proceedings*

On September 14, 2020, Salman filed a request for a domestic violence restraining order, along with a notice of hearing, and a proof of service.

Salman averred under penalty of perjury: "My brother has refused to stop harassing me with threatening, intensely offensive and damaging communications through email, mail, and Facebook despite the fact that I have repeatedly asked him to stop doing so. He also contacted my employer. His communications are unavoidable, pervasive, frightening and dangerously intense, such that I am now constantly afraid that his communications will escalate into physical violence." Salman stated: "I am living in constant fear of my brother, especially now that he has started contacting my employer. I am in fear of my safety, and of him destroying my personal life and professional career with his harassing behavior and lies."

Attached to Salman's request for a restraining order were: a) printed excerpts from the DouchebagsExposed.com website, b) a copy of the letter to the dean, and c) printed copies of e-mails Salman had received from Emerson.

On September 15, 2020, the trial court issued a first amended temporary restraining order and set a hearing for November 2, 2020.

On October 5, 2020, Emerson filed a response. Emerson disagreed with the temporary order. Emerson stated: "The petitioner's main objective is to get control of my website and cover up any negative or damaging information about the abuses I have suffered at the hands of these people - the Petitioner, her family and other intermediaries." Emerson included 120 pages of exhibits, including a 22-page declaration, and an unpublished appellate opinion.

On November 2, 2020, the trial court conducted a hearing. Emerson was not present. The court found Emerson received "good notice" and proceeded by way of default. Salman's counsel told the court Emerson had sent him an e-mail, which stated:

4

"'I just went ahead and took down the site. That should take care of any other violations, and we'll see what the judge decides on November 2.'"

Salman testified her written statements were true and correct. The court asked about the significance of Emerson's letter to her employer. Salman said: "Well, my boss actually he's Jewish, and I have a good relationship with him, so he told me he didn't believe it, but . . . they have to go through the process and just do the investigation and record it. [¶] So luckily no one believed it, but it still had an impact on me. That's the first time I ever got called in by my boss. . . . It was very embarrassing . . . and even though I didn't write it, I felt very -- like, I'm sure it affected them, and so -- and then it was just too -- it was just like an extra stress. I had five hours of lecture that day, and then Covid hit the next few days later. It was very draining and unnecessary, and I felt bad that even my dean and HR has to read that."

The court asked Salman how she determined the letter to her dean was from her brother. Salman said: "Three years ago, my brother posted on his douchebag thing saying that I was antisemitic, and then we got it taken off because my other lawyer filed a cease and desist letter, and then two years later, 2018, he actually sent letters to my parents' neighbors, saying that they're terrorists. . . . So my parents still have that letter, and it looked very similar . . . . That's something my brother would do."

The court asked Salman why she thought this was happening. Salman said: "I think it's a few things. So yeah. He doesn't like my religion. I think it came from my dad, and so he holds grudges. He never let's go. He's unwell. I think he's sick. So that's why I've been like sympathetic, but he just never lets it go, and he's always angry, and he just -- I guess he was bullied and stuff, and he hates my -- he thinks being Muslim, and Muslim people hurt him a lot. So he thinks he has a right to keep -- never let it go and keep hurting other people."

The court asked Salman how her life had been affected by Emerson's conduct. Salman testified: "Well, with the emails, the letters, was embarrassing to my

5

boss.  So they knew about my family first of all, and then the email with the 'douchebag.'  He sent that email to my coworkers, and they're emailing me, saying, 'Oh my god.  Somebody is putting porn, and they're putting your name.'  I just feel so embarrassed.  I feel like I have to explain.  Okay.  . . . I just don't like to bring that to my work.  [¶]  And then just -- I've been writing more -- because I'm a professor, I've been published.  I got an article accepted in New England and another journal accepted.  Now, I worry that people Google me, and they'll see that website.  So I was really scared about a month.  It was public.  I was just like -- even though it's not true, but I don't want people Googling me and finding that, and they identify me with my school.  So like -- and I represent my school.  So they're not used to this type of thing, so it's caused me a lot of anxiety, like depression too."

After the hearing, the trial court filed a written ruling:  "The Court finds the communications/emails increased.  The Court further finds Responding party was disturbing peac [*sic*] and calm of the Moving party.  The court finds harassment occurred."

The court issued a five-year domestic violence restraining order.  The order included standard conditions generally prohibiting harassment, including "no-contact" and "stay-away" orders.  The court ordered:  "Request for control of website (www.douchebagsexposed.com) is denied.  Harassing posts about protected party shall be removed, if not previously removed by the restrained party."

II

DISCUSSION

Emerson's sole argument on appeal is the evidence does not support the trial court's conclusion that he harassed Salman.

"The trial court's factual findings . . . are subject to limited appellate review and will not be disturbed if supported by substantial evidence."  (*Williams v. Saunders*

6

(1997) 55 Cal.App.4th 1158, 1162.) "When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . ." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.)

"Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom." (*Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577.) "The testimony of a single credible witness may constitute substantial evidence." (*City and County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381, 396.) When conducting a substantial evidence review, we view the whole record in a light most favorable to the judgment, we resolve all evidentiary conflicts in favor of the decision, and we draw all reasonable inferences in favor thereof. (*CADC/RADC Venture 2011-1 LLC v. Bradley* (2015) 235 Cal.App.4th 775, 787.) "The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

A trial court may issue a restraining order to prohibit harassment. "A person who has suffered harassment . . . may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section." (Code Civ. Proc., § 527.6, subd. (a)(1).)[1] Generally, a petitioner's burden of proof to obtain a restraining order is by clear and convincing evidence. (§ 527.6, subd. (i).) However, for a domestic violence restraining order, the petitioner's burden of proof is by a preponderance of the evidence. (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 90, fn. 14.)

"Harassment" is defined as "unlawful violence, a credible threat of violence, or a *knowing and willful course of conduct directed at a specific person that*

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

7

*seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose*. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3), italics added.) A "course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including . . . sending harassing correspondence to an individual by any means." (§ 527.6, subd. (b)(1).)

The appellate record contains evidence Emerson engaged in alarming and annoying behavior specifically directed at Salman for no legitimate purpose. Emerson's behavior caused Salman to suffer depression and anxiety, particularly the correspondence directed to her place of employment. The trial court implicitly found Emerson's pattern of behavior would cause a reasonable person to suffer substantial emotional distress, and that Emerson's conduct actually caused Salman to suffer substantial emotional distress. Emerson's conduct was not an isolated incident. Rather, Emerson committed a series of acts over a period of time. Further, as the trial court noted, Emerson's communications seemed to be increasing in their frequency and severity.

In sum, there is substantial evidence to support the trial court's finding of fact that Emerson "harassed" Salman; therefore, this court affirms the court's issuance of the domestic violence restraining order.

Emerson argues "Salman committed perjury; therefore, the restraining order should be completely lifted." But our role as an appellate court is not to gauge the credibility of witnesses. In a substantial evidence review, our role "*begins and ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the" trial court's factual finding. (*Bowers v. Bernards*, *supra*, 150 Cal.App.3d at pp. 873-874.)

Here, the written statements, the oral testimony, and the documentary evidence support the trial court's finding of fact that Emerson harassed Salman.  (See § 527.6, subd. (b)(3).)  Thus, this court's substantial evidence review is at its end.


## III

## DISPOSITION

The trial court's domestic violence restraining order issued on November 2, 2020, is affirmed.  The parties shall bear their own costs on appeal.



MOORE, ACTING P. J.

WE CONCUR:


FYBEL, J.


GOETHALS, J.