Filed 8/19/20  Schurtz v. Schurtz CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| JIM SCHURTZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> HUGH SCHURTZ, Individually and as Trustee, etc., <br><br> Defendant and Appellant. | B291491 <br><br> Los Angeles County <br> Super. Ct. No. 16STPB04492 |


APPEAL from a judgment of the Superior Court of Los Angeles County, Brenda Penny, Commissioner.  Affirmed in part, reversed in part with directions.

Cliff Dean Schneider for Defendant and Appellant.

Keystone Law Group, Shawn S. Kerendian and Lindsey F. Munyer for Plaintiff and Respondent.

## INTRODUCTION

Don Schurtz settled the Don J. Schurtz Family Living Trust, listing his children Hugh Schurtz, Jim Schurtz, and Dana Perry as equal beneficiaries.[1]  Hugh became successor trustee after Don's death.  Administration of the trust turned to litigation when Jim filed two petitions under the Probate Code to compel an accounting and confirm trust assets.  (See Prob. Code, §§ 17200, subd. (b)(7)(C) [compel accounting] & 850, subd. (a)(3)(B) [confirm trust assets].)[2]  Hugh filed the accounting and objected to the section 850 petition.  Jim objected to the accounting.

Hugh and Jim settled their disputes at a mediation. The resulting settlement agreement required Hugh to pay Jim a total of $172,500 from IRA accounts held by the trust and other unidentified assets.  In exchange, Jim agreed to dismiss his section 850 petition, withdraw his objections, and approve the accounting.  Hugh refused to make the payment, however, after he received emails he believed Jim sent in violation of the settlement agreement.

Jim moved for a judgment to enforce the settlement agreement under Code of Civil Procedure section 664.6.[3] Hugh opposed the motion, arguing Jim's breach discharged

---

[1]     For clarity, we refer to the parties by their first names.

[2]     Statutory references are to the Probate Code, unless otherwise designated.

[3]     Code of Civil Procedure section 664.6 authorizes the court to enforce a settlement agreement by converting it into a judgment.  (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington*).)

his obligation to make the settlement payment and excused his nonperformance. The trial court granted the motion and entered judgment against Hugh, individually and in his trustee capacity, jointly and severally, requiring him to pay Jim $172,500 as set forth in the settlement agreement.

Hugh appeals the judgment. He contends the court erred when it admitted into evidence Jim's supporting declaration, which Hugh contends was not "subscribed" by Jim as required under Code of Civil Procedure section 2015.5. Without Jim's declaration, Hugh argues the evidence was insufficient to support Jim's motion or to rebut Hugh's claim that Jim breached the agreement. Hugh also contends the court lacked jurisdiction to enter a judgment against him in his individual capacity.

We conclude there was sufficient evidence, even without Jim's declaration, to enter the judgment against Hugh in his trustee capacity, but we agree with Hugh that the court was not authorized under the settlement agreement to make Hugh individually liable for the settlement payment. Thus, we will affirm in part, and reverse in part, with directions to modify the judgment to strike the portion holding Hugh individually liable.

## FACTS AND PROCEDURAL BACKGROUND

Jim initiated this trust litigation with the filing of a section 850 petition to confirm trust assets. The petition concerned real property located on Parthenia Street in West Hills that Don and Hugh owned as tenants in common (the Parthenia Property). Don never recorded a deed transferring his interest in the property to the trust. Thus, at the time of Don's death, the Parthenia Property remained titled in Don's and Hugh's names. In his section 850 petition, Jim claimed a provision of the trust declaring Don's intention to transfer all of his property into

3

the trust was effective to transfer the Parthenia Property, notwithstanding the statute of frauds. Jim recorded a lis pendens on the Parthenia Property.

Hugh opposed Jim's section 850 petition. In his response, Hugh argued the trust provision was insufficient to satisfy the statute of frauds, and he claimed he had an unwritten agreement with Don to convert their ownership interests to a joint tenancy with right of survivorship.

Jim also filed a petition to compel an accounting of trust assets. Hugh filed the accounting, and Jim objected to it. Among other things, Jim objected to a $148,414.02 creditor claim Hugh made for living expenses he purportedly advanced to Don. Before Hugh filed a response to Jim's objections, the parties settled their disputes at mediation.

Jim, Hugh, and their respective counsel signed the written settlement agreement. As pertinent to this appeal, the agreement contained the following provision regarding the settlement of Jim's pending claims: "In settlement of all monetary claims, the accounting is approved [and] objections are withdrawn, on the following conditions: [¶] The sum of $172,500 shall be paid [no later than December 1, 2017] as follows: [¶] a) The [two] Jackson Annuities IRA's (all IRA accounts) will be distributed in kind to Jim, in an amount not to exceed [one-third] of the total IRA accounts[;] [¶] b) The balance due to Jim shall be paid by wire transfer to the client trust account at [Jim's attorneys]." The settlement agreement also required Jim to dismiss the section 850 petition and remove the lis pendens on the Parthenia Property "upon completion" of the foregoing provision. Additionally, Hugh and Jim mutually agreed that "neither of them shall contact the other in any form (except

4

through counsel . . . ) upon signing of this agreement." The agreement required Hugh to release his creditor's claim.

On December 1, 2017, Jim's attorney emailed Hugh's attorney regarding the status of the settlement payment. Later that day, Hugh emailed Jim's attorney to notify her that he would not make the settlement payment because he believed Jim violated the agreement by contacting him via email.

On January 26, 2018, Jim filed a motion to enforce the settlement agreement under Code of Civil Procedure section 664.6. The motion sought a judgment requiring Hugh, individually and in his trustee capacity, jointly and severally, to pay Jim $172,500 as provided in the agreement's monetary claims provision. Jim offered a supporting declaration denying any communication with Hugh, by email or otherwise, since execution of the settlement agreement. His attorney also offered a supporting declaration authenticating the settlement agreement and confirming that Hugh had not made the $172,500 payment.

Hugh opposed the motion. He argued Jim "did not adhere to the agreement" and this discharged his duty to "obligate the Trust [to pay] any funds to [Jim]." In support of the claim, Hugh attached a series of emails he received from several different accounts (info@whole-sky.com, audainm@district148.net, moni@m-klemme.de, jimmie.schurtz465@biblio.uniroma2.it, abramstk@lopers.unk.edu, contact@sesame14.fr) bearing the sender name "Jimmie Schurtz." The emails all consisted of a one-line message—e.g., "something you would appreciate"—followed by an Internet hyperlink.

The trial court held a hearing and received argument on the motion to enforce. In addition to arguing the emails

5

discharged his duty to make the settlement payment, Hugh objected that the signature on Jim's declaration was not Jim's actual signature. After confirming the parties had nothing further to offer, the court granted the motion.

On May 10, 2018, the trial court entered a judgment ordering Hugh, individually and as trustee of the trust, jointly and severally, to pay Jim $172,500 "as follows: [¶] i. The distribution in-kind of one-third (1/3) of Decedent's two IRA Accounts with Jackson Annuities . . . ; and [¶] ii. The balance remaining, minus the transfer of the IRA Accounts, to be paid in cash to [Jim's attorneys'] attorney-client trust account." Hugh filed a timely notice of appeal from the judgment.

## DISCUSSION

### 1. *Governing Law and Standard of Review*

Code of Civil Procedure section 664.6 creates "a summary procedure for specifically enforcing certain types of settlement agreements by converting them into judgments." (*Weddington, supra,* 60 Cal.App.4th at p. 797.) The statute provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (Code Civ. Proc., § 664.6.)

The trial court's factual findings on a motion to enforce a settlement "are subject to limited appellate review and will not be disturbed if supported by substantial evidence." (*Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162 (*Williams*); *Osumi v.*

6

*Sutton* (2007) 151 Cal.App.4th 1355, 1360 (*Osumi*).) Under the substantial evidence rule, we must view the evidence in the light most favorable to the trial court's order, presume every fact the court could reasonably have deduced from the evidence, and defer to the trial court's determination of the evidence's weight and credibility. (*Campbell v. Southern Pac. Co.* (1978) 22 Cal.3d 51, 60.)

A judge hearing a motion to enforce a settlement may "receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment." (*Weddington, supra,* 60 Cal.App.4th at p. 810.) However, "nothing in [Code of Civil Procedure] section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Ibid.*; *Osumi, supra,* 151 Cal.App.4th at p. 1360.)

Although the trial court's factual determinations are entitled to deference, where a pure issue of law is presented requiring the application of legal principles to undisputed facts, the appellate court reviews the issue de novo. (*Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 437; see also *Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533–1535 [resolving factual disputes under substantial evidence standard, but determining legal issues de novo].) The interpretation of a contract is a judicial function, subject to our de novo review, unless the interpretation turns upon the credibility of extrinsic evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 (*Parsons*).)

**2.** *Substantial Evidence Supports the Entry of Judgment to Enforce the Settlement Agreement*

7

Hugh contends the evidence was insufficient to support the trial court's judgment under Code of Civil Procedure section 664.6. However, Hugh does not dispute the authenticity of the written settlement agreement, nor does he deny that he consented to the agreement's material terms when he signed it in his capacity as trustee.[4] Thus, the statutory prerequisites for entry of judgment were met and the only questions for review are whether substantial evidence establishes Hugh breached the settlement agreement and whether, as he asserts, his nonperformance under the agreement was excused. (See Code Civ. Proc., § 664.6; *Weddington, supra,* 60 Cal.App.4th at p. 797.) We resolve these questions in favor of the judgment and conclude the trial court properly enforced the settlement agreement against Hugh in his trustee capacity.

a. ***Hugh failed to perform under the settlement agreement***

We begin with the breach issue. As Hugh correctly notes, the settlement agreement authorizes a motion for enforcement only upon a party's "failure to comply with the terms of this settlement." Thus, to obtain a judgment under Code of Civil Procedure section 664.6, Jim had the burden of proving a breach had occurred. In his motion, Jim asserted Hugh breached the agreement by failing to perform under a provision requiring Hugh to pay Jim a total of $172,500. The trial court implicitly found Hugh breached the agreement when it incorporated this

_____

[4]     As we discuss later, in challenging the trial court's joint and several liability ruling, Hugh does dispute that he consented to the settlement agreement in his individual capacity. Our discussion in this section is limited to the judgment against Hugh in his trustee capacity.

8

provision into the judgment. Hugh acknowledges our review is limited to determining whether substantial evidence supports the trial court's finding. (See *Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889; *Williams, supra,* 55 Cal.App.4th at p. 1162.)

Hugh contends the trial court erred in admitting Jim's supporting declaration, which Hugh maintains Jim did not sign with his " *'own hand'* " as required under Code of Civil Procedure section 2015.5. (*In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1222; Code Civ. Proc., § 2015.5 [authorizing submission of unsworn declaration provided it is certified to be true under penalty of perjury and "subscribed" by the declarant].) We need not decide whether the court properly admitted the declaration into evidence because, contrary to Hugh's contention, other substantial evidence supports the court's finding.[5]

In addition to his own declaration, Jim offered his attorney's declaration in support of the motion. In her declaration, Jim's counsel authenticated the settlement agreement and an email exchange she had with Hugh, in which Hugh unequivocally stated he had no intention of making the settlement payment without a directive from the trial court. Jim's counsel also confirmed that her firm had not received the settlement payment from Hugh. This evidence was sufficient to support the court's finding that Hugh failed to comply with the settlement agreement's terms. (See *Mickelson Concrete Co. v. Contractors' State License Bd.* (1979) 95 Cal.App.3d 631, 634

---

[5] Jim maintains he signed the declaration "electronically" in accordance with California Rules of Court, rule 2.257(b). We need not address the merits of his argument.

9

["A single witness'[s] testimony may be sufficient to satisfy the substantial evidence test."].)

> **b.** ***Hugh failed to prove his nonperformance was excused***

In his email correspondence with Jim's attorney, Hugh maintained he had no obligation to make the settlement payment because Jim had already breached the agreement by emailing Hugh in violation of a provision prohibiting the parties from contacting each other "in any form," except through counsel. In opposing Jim's motion, Hugh submitted a series of emails he received from several different accounts bearing the name "Jimmie Schurtz." Based on the emails, Hugh argued Jim's breach of the no-contact provision discharged his obligation to make the settlement payment and excused his nonperformance. In his declaration, Jim denied sending Hugh the emails.[6] As discussed, Hugh argues the trial court erred in admitting Jim's declaration into evidence. Thus, he contends the trial court was compelled to excuse his nonperformance because there was no evidence to contradict his contention that Jim contacted him in violation of the agreement. We disagree.

---

[6]     Jim's attorney also declared that she had spoken to Jim and that Jim denied sending the emails to Hugh. Because the trial court received the attorney's declaration without objection from Hugh, this evidence alone would be sufficient to affirm the judgment. (*Flood v. Simpson* (1975) 45 Cal.App.3d 644, 649 ["It is well settled that hearsay or other incompetent evidence in an affidavit . . . if received without proper objection or motion to strike is to be regarded as competent evidence in support of an order or judgment."].)

We must determine whether substantial evidence supports the court's implicit finding that Hugh's obligation to make the settlement payment was not discharged. (See *Whitney Inv. Co. v. Westview Dev. Co.* (1969) 273 Cal.App.2d 594, 601.) Critically, however, it was *Hugh*—not Jim—who had the burden of proving Jim's breach excused Hugh's nonperformance. (See *Jacobs v. Tenneco West, Inc.* (1986) 186 Cal.App.3d 1413, 1417 ["the burden of proof is shifted to the breaching party by virtue of the breach" to prove his nonperformance was excused].) "[W]here the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals," the question for the reviewing court is not so much whether substantial evidence supports the trial court's finding, but "whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 (*I.W.*), citing *Roesch v. De Mota* (1944) 24 Cal.2d 563, 570–571, disapproved on other grounds in *Conservatorship of O.B.* (July 27, 2020, S254938) __Cal.5th __ [2020 Cal. Lexis 4646 at *19, fn. 4].) Specifically, "the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' *and* (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding [in the appellant's favor].' " (*I.W.,* at p. 1528, italics added.) Even absent Jim's declaration denying he emailed Hugh, we conclude Hugh's evidence was not of a sufficient character and weight that it compelled the trial court, as a matter of law, to find Hugh's nonperformance was excused.

"When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract."

(*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277.) But if the alleged breach related to a covenant independent of, and not material to, the innocent party's obligation, the breach does not excuse that party's nonperformance. (*Id.* at p. 279.) "The determination of whether a promise is an independent covenant, so that breach of that promise by one party does not excuse performance by the other party, is based on the intention of the parties as deduced from the agreement." (*Ibid.*) In determining the materiality of a breach, the following factors are to be considered: "(1) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated; (2) the extent to which the injured party may be adequately compensated in damages for lack of complete performance; (3) the extent to which the party failing to perform has already partly performed or made preparations for performance; (4) the greater or less hardship on the party failing to perform in terminating the contract; (5) the wilful, negligent, or innocent behavior of the party failing to perform; and (6) the greater or less uncertainty that the party failing to perform will perform the remainder of the contract." (*Sackett v. Spindler* (1967) 248 Cal.App.2d 220, 229 (*Sackett*).)

Hugh did not conclusively prove, as a matter of law, that Jim's purported breach was material or that it discharged Hugh's obligation to make the $172,500 settlement payment. The terms of the agreement unambiguously show that Hugh agreed to make the settlement payment in exchange for Jim's promise to dismiss his section 850 petition and approve the accounting. Hugh offered no evidence to prove he was unlikely to receive those anticipated benefits, and he likewise failed to show damages would be insufficient to compensate him for the harm Jim's

12

alleged emails caused. To the contrary, in a message to his attorney, Hugh described the emails as merely "stupid ad[s]," for which he demanded "damages"—not rescission of the agreement. Given this conflicting and marginal evidence, the trial court was not compelled to find the hardship Hugh experienced from receiving some cryptic emails outweighed the hardship Jim would suffer from Hugh's refusal to make the settlement payment. (See *I.W., supra,* 180 Cal.App.4th at p. 1528.) Hugh failed to prove his nonperformance was excused. (Cf. *Sackett, supra,* 248 Cal.App.2d at p. 230 [party was justified in terminating agreement because evidence showed it was "extremely uncertain" breaching party would perform].)

3.   ***The Judgment Is Inconsistent with the Settlement Agreement to the Extent It Holds Hugh Individually Liable***

We now turn to the portion of the judgment holding Hugh, individually and in his trustee capacity, jointly and severally liable. As discussed, the judgment incorporates the part of the settlement agreement requiring Hugh to pay Jim a total of $172,500. Hugh contends he consented to the provision only on behalf of the trust in his trustee capacity, and the trial court therefore lacked jurisdiction to enter a judgment against him individually.[7] Because the parties could not have reasonably

_____

[7]    Jim argues Hugh forfeited this issue by failing to raise it in the trial court. He is incorrect. Code of Civil Procedure section 664.6 authorizes the court to enter a judgment consistent with the terms of a settlement agreement; it does not confer jurisdiction to create material terms the parties did not agree to. (*Steller v. Sears, Roebuck & Co.* (2010) 189 Cal.App.4th 175, 180; *Osumi, supra,* 151 Cal.App.4th at p. 1360.) Because Hugh argues

13

agreed to create a joint obligation that would result in a conflict between Hugh's personal financial interest and his statutorily mandated duty to preserve trust assets, we agree with Hugh and conclude he cannot be held individually liable for the obligation.

" 'A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts.' " (*Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1123 (*Canaan*); *Weddington, supra,* 60 Cal.App.4th at p. 810.) Absent a factual dispute arising from the credibility of extrinsic evidence, we independently determine a settlement contract's terms in accordance with applicable legal principles. (*Canaan*, at p. 1124; *Parsons, supra,* 62 Cal.2d at p. 866.)

" ' "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.)" ' " (*Canaan, supra,* 211 Cal.App.4th at p. 1124.) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause

_____

the trial court exceeded its jurisdiction by entering a judgment inconsistent with the settlement agreement's terms, he may properly raise the issue for the first time on appeal. (See *Estate of Buckley* (1982) 132 Cal.App.3d 434, 446 ["Where a statute relates to jurisdiction in the 'fundamental' sense, that is to authority over the subject matter or the parties, disregard of the statute may render the judgment void and subject to collateral attack."]; *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339 [" ' "[A] claim based on a lack of . . . fundamental jurisdiction[ ] may be raised for the first time on appeal." ' " (Italics omitted.)].)

14

helping to interpret the other." (Civ. Code, § 1641.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) " 'The factual context in which an agreement was reached is also relevant to establish its meaning unless the words themselves are susceptible to only one interpretation.' " (*Canaan,* at p. 1124.; see *Nish Noroian Farms v. Agricultural Labor Relations Bd.* (1984) 35 Cal.3d 726, 735; Civ. Code, § 1647 ["A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."].)

Applying these principles, we must determine whether the settlement agreement is reasonably susceptible of an interpretation jointly obligating the trust and Hugh, in his individual capacity, to pay Jim $172,500 as provided in the trial court's judgment.[8] The provision at issue states, "[i]n settlement of all monetary claims" and in exchange for Jim's withdrawal

---

[8] Contrary to one of Hugh's arguments, the settlement agreement does contain certain obligations that unambiguously bind Hugh in his individual capacity. As Jim notes, the agreement requires Hugh to release a creditor's claim for $148,414.02 that Hugh asserted against the trust, in his individual capacity, for living expenses he purportedly advanced to Don. Hugh's mutual agreement with Jim not to contact the other in any form, except through their counsel, also presumably binds Hugh in his individual capacity. Nevertheless, because the judgment incorporates only the obligation to pay Jim $172,500 as provided in the monetary claims provision of the settlement agreement, our review of the court's joint and several liability ruling necessarily focuses on that obligation, and not these other miscellaneous provisions.

15

of his objections and approval of the accounting, "[t]he sum of $172,500 shall be paid . . . as follows: [¶] a) The [two] Jackson Annuities IRA's (all IRA accounts) will be distributed in kind to Jim, in an amount not to exceed [one-third] of the total IRA accounts; [¶] b) The balance due to Jim shall be paid by wire transfer to [his attorneys' client trust account]."

Jim does not dispute the provision requires Hugh, in his trustee capacity, to make the IRA payment from trust assets. However, Jim emphasizes there are no "express terms" requiring Hugh to make the balance wire transfer payment from any "specific assets." Based on this ambiguity, Jim argues the payment "could have come from anywhere, including Hugh's personal funds," and the trial court thus properly held Hugh and the trust jointly and severally liable for the $172,500 obligation.[9] The agreement is not reasonably susceptible of this interpretation.

Jim's proposed construction creates a conflict of interest, pitting Hugh's individual interest in paying as little as possible from his personal assets against his statutory duty to "take

---

[9]     When the parties formed the settlement agreement, the trust had sufficient assets to satisfy the obligation without Hugh's personal contribution. According to the approved accounting, the value of the two Jackson Annuities IRA accounts totaled $29,185.76 and the trust had $275,586.76 of cash on hand at the end of the accounting period.

16

reasonable steps" as the trustee "to preserve the trust property." (§ 16006.) Jim maintains Hugh and the trust can be held jointly liable for the settlement payment because the agreement does not specify what assets were to be used to pay the balance left after making the IRA payment. However, Jim does not claim Hugh was *required* to make the payment from personal assets. Instead, because the agreement is silent about the source of the funds, Jim tacitly concedes Hugh could make the payment from trust assets or personal assets in whatever proportion Hugh deemed fit. In other words, the necessary implication of Jim's proposed construction is that, in making Hugh jointly obligated with the trust for the balance payment, the parties also contractually authorized Hugh to use as much of the trust assets as he wished to satisfy his personal part of the obligation. Given Hugh's statutory duties as trustee, the parties could not have agreed to such an obvious conflict of interests. (See *Roden v. AmerisourceBergen Corp.* (2010) 186 Cal.App.4th 620, 651 ["[W]e must interpret a contract in a manner that is reasonable and does not lead to an absurd result."]; see also Civ. Code, § 1641.)

Apart from avoiding absurdities, we must give the settlement agreement "such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.) Here, the monetary claims provision can be reasonably interpreted to avoid the conflict of interests that Jim's proposed construction creates. As discussed, the provision unambiguously binds Hugh, in his *trustee capacity*, to make the IRA payment from *trust assets*. Although the provision does not specify the source for the balance payment, it can be reasonably construed, consistent with the IRA

17

payment clause, likewise to require Hugh, in his trustee capacity, to make the payment from trust assets.

This construction is consistent with the structure of the provision. The settlement arose out of Jim's petition to compel an accounting and his subsequent objection to the accounting Hugh filed as trustee. (See § 17200, subds. (a) & (b)(7)(C) [authorizing beneficiary to initiate judicial proceeding to compel trustee to account to beneficiary].) At the time of the settlement, Jim had no "monetary claims" against Hugh individually. Rather, Jim's claims were entirely based on his interest as a trust beneficiary in trust assets. Consistent with that underlying circumstance, the agreement states that in settling "all monetary claims," Jim would approve the accounting and withdraw his objections—matters solely implicating Hugh's administration of the trust. (See § 16004.5, subd. (b)(5) [authorizing trustee to obtain beneficiary approval of an accounting of trust activities]; cf. *Bellows v. Bellows* (2011) 196 Cal.App.4th 505, 511 [explaining § 16004.5 permits trustee and beneficiary to settle claim over disputed amount of distribution so long as agreement is not conditioned on beneficiary's release of right to an accounting].) In consideration for settling those matters, the provision contemplates a total payment of $172,500 to Jim, with part of the payment coming from the trust's IRA accounts and the "balance" from a wire transfer. Given the structure of the provision, it stands to reason that the parties intended the IRA payments and the "balance" to come from the same source—namely, trust assets. Conversely, had the parties intended Hugh to pay any portion of the balance from his personal assets, we must presume they would have specifically provided as such. They would not have relied on an ambiguous provision to create a joint

18

obligation, especially given the inherent conflict of interest that would arise from allowing Hugh to make the payment from trust assets.

Jim argues his proposed interpretation does not necessarily create a conflict of interest because, although Hugh was the trustee, he "was also a beneficiary," and he "could have contracted to pay to Jim a portion of his beneficial interest in the Trust in compromise of the litigation."  Jim also suggests that it is "reasonable for Hugh to be individually responsible" because Hugh "personally benefited" from Jim's dismissal of the section 850 petition and the withdrawal of the lis pendens on the Parthenia Property.

The problem with these arguments, and with Jim's proposed construction generally, is that nothing in the settlement agreement expressly binds Hugh to use his personal assets (or his personal beneficial interest in the trust) to satisfy any portion of the $172,500 settlement payment.  Thus, as we have discussed, Jim can only argue for a joint obligation by speculating that the settlement payment "could have come from *anywhere*, including Hugh's personal funds."  (Italics added.)  But "anywhere" implies that Hugh could also use trust assets, in his trustee capacity, to satisfy the obligation.  Because the parties could not have reasonably agreed to create such an obvious conflict of interests, the agreement must be construed, consistent with the IRA payment clause, to bind Hugh, in his trustee capacity, to make the entire settlement payment from trust assets.  The trial court erred in holding Hugh, in his individual capacity, jointly and severally liable for the settlement payment.

19

## DISPOSITION

The judgment is reversed to the extent it holds Hugh, in his individual capacity, jointly and severally liable with the trust, and the judgment is modified to strike the part making Hugh individually liable.  The judgment is affirmed in all other respects.  The parties shall bear their own costs for the appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


EGERTON, J.

We concur:



EDMON, P. J.



DHANIDINA, J.